IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**CARLOS SIBLEY**                                                                 **PLAINTIFF**

v.                                                          CIVIL ACTION NO. 2:20-cv-91-TBM-MTP

**BILLY MCGEE, ET AL.**                                                      **DEFENDANTS**

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment [25] and Second Motion for Summary Judgment [31]. Having considered the Motions [25] [31], the record, and the applicable law, the undersigned recommends that Motion [25] be denied, Motion [31] be granted in part and denied in part, and this action be dismissed with prejudice.

## BACKGROUND

On May 14, 2020, Plaintiff Carlos Sibley, proceeding *pro se* and *in forma pauperis*, filed his complaint pursuant to 42 U.S.C. § 1983. This lawsuit arises from events which occurred while Plaintiff was housed at the Forest County Jail. According to Plaintiff, certain events occurred while he was housed as a pretrial detainee and other events occurred after Plaintiff had been convicted of murder. Plaintiff is currently incarcerated as a post-conviction inmate at the Wilkinson County Correctional Facility.

*Plaintiff's Allegations*

In his complaint and as clarified in his testimony at the *Spears*[1] hearing, Plaintiff alleges that he was convicted of murder in March of 2019 and was housed at the Forrest County Jail prior to and after his conviction. Plaintiff asserts that because he killed an individual (Frank Jenkins) who had worked at the Forrest County Jail, he should have been housed at another jail.

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

1

Plaintiff asserts that Defendants Gary Collins and Trey Rudder, officers with the Forrest County Sheriff's Department, should have made sure he was housed at another jail. Plaintiff also alleges that Collins and Rudder placed him in protective custody even though Plaintiff did not want to be housed in protective custody.

According to Plaintiff, he and another inmate, Donoven Harris, escaped from the Forrest County Jail. Plaintiff alleges that while he was on the lam, officers at the jail confiscated his property, such as clothes and mail. Plaintiff asserts that Collins and Rudder were responsible for returning his property, but they failed to do so.

Plaintiff alleges that after he was captured and returned to the jail, he and Harris were placed in solitary confinement. Plaintiff alleges that Collins and Rudder kept him in solitary confinement longer than Harris. Additionally, Plaintiff alleges that Defendant Daniel Cooley was responsible for the inmates in solitary confinement. Plaintiff alleges that he received a shower each day, except when Cooley was on duty. Specifically, Plaintiff alleges that he would miss approximately three showers a week when Cooley was on duty. Plaintiff also alleges that Cooley did not allow Plaintiff to make phone calls, used racial slurs, and said he did not like Plaintiff.

Concerning Defendant Sheriff Billy McGee, Plaintiff alleges that he was not granted a bond after his criminal charge was lowered from capital murder to second degree murder. Plaintiff, however, admits that he does not know if Sheriff McGee has any responsibility for determining whether Plaintiff should be granted a bond.

Plaintiff also complains that Sheriff McGee housed him with his co-defendants in the murder case (Aaron Jones and David Jones). Plaintiff alleges that the codefendants assaulted

him. According to Plaintiff, jail policy requires that co-defendants be housed separately, and Sheriff McGee knew Plaintiff and his co-defendants should not have been housed together.

***Defendants' Motions for Summary Judgment [25] [31]***

On March 18, 2021, Defendants filed a Motion for Summary Judgment [25] based on Plaintiff's failure to allege how Defendants were personally involved in any constitutional violation and his failure to exhaust administrative remedies. On March 25, 2021, the Court conducted a *Spears* hearing during which Plaintiff's claims and relief sought were clarified and amended by his sworn testimony.[2]

On June 15, 2021, Defendants filed their Second Motion for Summary Judgment [31]. In this Motion [31], Defendants argue that Plaintiff failed to exhaust his administrative remedies for his claims against Cooley and that all of Plaintiff's claims fail on their merits. Plaintiff did not file a response to either of Defendants' Motions for Summary Judgment.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted). The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the

---

[2] *See Flores v. Livingston*, 405 Fed. App'x. 931, 932 (5th Cir. 2010); *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987) (stating that allegations made at a *Spears* hearing supersede claims alleged in the complaint).

action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted). Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

## ANALYSIS

### *Motion for Summary Judgment [25]*

In their first Motion for Summary Judgment [25], Defendants argue that they are entitled to summary judgment due to Plaintiff's failure to allege how Defendants were personally involved in any constitutional violation and due to his failure to exhaust administrative remedies. Defendants argue that, based on the allegations in Plaintiff's Compliant [1] and Response [11],

he failed to plead that any Defendant (other than Defendant Cooley) was personally involved in a constitutional violation. After Defendants filed this Motion [26], however, Plaintiff clarified and amended his claims during testimony at a *Spears* hearing, and the pleadings which Defendants challenge in their Motion [25] no longer contain the operative allegations. *See Flores*, 405 Fed. App'x. at 932; *Riley*, 828 F.2d at 307. The operative allegations are now contained in the Omnibus Order [28]. Accordingly, the first Motion [25] should be denied to the extent it challenges the sufficiency of the pleadings.

In their Motion [25], Defendants also argue that summary judgment should be granted in favor of Defendant Cooley because Plaintiff failed to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. § 1983. "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). The United States Court of Appeals for the Fifth Circuit held that "[s]ince exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272. Because exhaustion is an affirmative defense, Defendants bear the burden of demonstrating that Plaintiff failed to exhaust available administrative remedies. *Id*. at 266.

In support of their Motion [25], Defendant submitted an affidavit from Major Julie Flowers and Plaintiff's jail file, including his administrative grievances. *See* [27]. Defendants assert that the grievance policy at the jail required inmates to submit a signed grievance containing the following information: inmate's name, social security number, and cellblock, the date of grievance, an exact description of complaint, and relief or resolution desired. Defendants

assert that Plaintiff failed to submit a grievance concerning the allegations against Defendant Cooley.

Defendants did not submit a copy of the jail's grievance policy or an affidavit setting forth the procedure. Instead, Defendants cite other cases in this Court indicating that the jail had an administrative remedies program in place during 2019. However, except in extraordinary cases, courts will not look outside the record of a case before it to take notice of proceedings in another case not in evidence. *See Morse v. Lewis*, 54 F.2d 1027, 1029 (4th Cir. 1932); *Fabricant v. Miranda*, 2021 WL 3661136, at *4 (D. Ariz. July 1, 2021); *Home Design Servs., Inc. v. Stewart*, 2011 WL 796741, at *6 (N.D. Fla. Feb. 28, 2011); *Anthony v. Potter*, No. CV 106-146, 2008 WL 11404257, at *1 (S.D. Ga. July 1, 2008). Defendants have not shown and the record does not establish that this is an extraordinary case justifying consideration of evidence submitted in another case as evidence in this case. Thus, there are genuine issues of material fact as to whether a policy existed or was in force and how it operated. Absent evidence clearly showing that a policy existed and identifying what was required to exhaust the administrative process at the jail, the Court cannot conclude that summary judgment is warranted based on Plaintiff's failure to exhaust. Accordingly, Defendants' Motion [25] should be denied.

***Second Motion for Summary Judgment [31]***

In their Second Motion for Summary Judgment [31], Defendants argue that they are entitled to summary judgment on Plaintiff's claims as clarified and amended during the *Spears* hearing.

*Exhaustion*

In their Motion [31], Defendants renew their request that the Court grant summary judgment in favor of Cooley due to Plaintiff's failure to exhaust his administrative remedies.

6

Defendants do not submit new evidence along with their second Motion [31], but incorporate the arguments raised in the prior Motion for Summary Judgment [25]. As previously explained, Defendants have failed to submit evidence showing that a grievance policy existed at the jail and identifying what was required to exhaust the administrative process. The Court should deny the Motion [31] to the extent it seeks summary judgment based on Plaintiff's failure to exhaust administrative remedies.

<u>Custody</u>

Plaintiff was convicted of murdering Frank Jenkins and was housed at the Forrest County Jail prior to and after his conviction. Plaintiff argues that because his victim had worked at the Forrest County Jail, Defendants Collins and Rudder should have assured that he was housed at another jail. Plaintiff also complains that Collins and Rudder placed him in protective custody despite his wishes.

A post-conviction prisoner's liberty interest protected by the Due Process Clause is "generally limited to freedom from restraint which . . . imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). "An inmate does not have a constitutional right to serve a sentence in any particular institution, or to be transferred or not transferred from on facility to another." *Johnson v. King*, 2013 WL 1729247, at *2 (S.D. Miss. April 22, 2013) (citing *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983)); *see also Blakeney v. Holman*, 2013 WL 4483433, at *4 (S.D. Miss. Aug. 19, 2013); *Rockett v. Keffer*, 2009 WL 775482, at *4 (W.D. La. Mar. 24, 2009). It would be an unreasonable interference with jail administration to rule that Plaintiff must be housed at a facility of his choosing based on his generalized fear of being housed at the Forrest County Jail. *Jones v. U.S.*, 534 F.2d 53, 54 (5th Cir. 1976) (prison officials have broad

discretion, free from judicial interference, in determining prisoner assignments). Additionally, Prisoners have no constitutionally-protected liberty interest in a particular housing assignment. *See Nathan v. Hancock*, 477 Fed. App'x 197, 199 (5th Cir. 2012) (no liberty interest is implicated by a prisoner's change in custody status, placement in segregation, and consequent restrictions on privileges); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) ("administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest"). Thus, to the extent Plaintiff brings claims as a post-conviction inmate based on his jail and custody assignments, those claims should be dismissed.

As a pretrial detainee, Plaintiff has a due process right not to be subjected to conditions that are imposed for the purpose of punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). In order to succeed on a claim alleging unconstitutional jail conditions, a pretrial detainee must establish that the complained-of conditions have been imposed for a punitive purpose and that they have resulted in "serious deficiencies" in providing for his "basic human needs." *Shepherd v. Dallas Cnty*, 591 F.3d 445, 454 (5th Cir. 2009). A punitive purpose may be inferred where the conditions are not reasonably related to a legitimate governmental interest. *Hamilton v. Lyons*, 74 F.3d 99, 105 (5th Cir. 1996). However, the imposition of restrictive conditions for a nonpunitive administrative reason does not violate due process rights. *Mason v. Klevenhagen*, 37 F.3d 632 (5th Cir. 1994).

Plaintiff has presented no evidence showing that his placement in protective custody at the Forrest County Jail amounted to punishment or that it resulted in any serious deficiencies in providing for his basic human needs. The fact that Plaintiff would have preferred to have been housed in general population or at a different jail does not create a protected liberty interest. Accordingly, Plaintiff's claims based on his jail and custody assignments should be dismissed.

*Deprivation of Property*

Plaintiff and Donoven Harris escaped from the Forrest County Jail on February 15, 2019. *See* [27] at 84. Plaintiff alleges that while he was on the lam, officers confiscated his property. Plaintiff asserts that Collins and Rudder were responsible for returning his property but failed to do so. Plaintiff's allegation amounts to a claim that he has suffered a loss of property without due process of law in violation of the Fourteenth Amendment.

According to Defendants, the record establishes that Plaintiff's property was not confiscated by jail officials, but was released by Plaintiff to a family member. Defendants submitted an "Authorization to Release Inmate Property," which demonstrates that on January 17, 2019—less than a month before his escape—Plaintiff released all of his property to Stacy Sibley. *See* [27] at 73.[3] According to Defendants, the record establishes that Collins and Rudder could not have deprived Plaintiff of his property because he had released his property to Stacy Sibley.

Defendants also argue that, even if there were a deprivation of property, Plaintiff has failed to present evidence showing that Collins and Rudder were personally involved in any such deprivation. Defendants point to Plaintiff's testimony that he did not observe Collins or Rudder take his property. *See* [31-1] at 15, 22. Instead, Plaintiff testified that he had "paperwork" indicating that he had to talk to Collins and Rudder about the return of his property. *Id*. Plaintiff, however, did not submit any document or other evidence demonstrating that Collins and Rudder were responsible for returning Plaintiff's property to him and refused to do so without due process.

---

[3] Plaintiff listed "wallet," "cell phone," and "everything" as the items he released to Stacy Sibley.

9

Plaintiff may not rest upon mere allegations contained in his pleading, but must designate specific evidence in the record of sufficient "caliber or quantity" to create a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986); *see also Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Plaintiff did not file a response to the Motion for Summary Judgment. "When a party does not file an opposition to a motion for summary judgment, the district court is permitted to consider the facts listed in support of the motion as undisputed and grant summary judgment if they show that the movant is entitled to judgment in his favor." *Jegart v. Roman Catholic Church Diocese of Houma-Thibodaux*, 384 Fed. App'x. 398, 400 (5th Cir. 2010). Plaintiff has failed to come forward with specific facts showing that there is a genuine issue for trial, and Defendants are entitled to summary judgment on Plaintiff's deprivation-of-property claim.

*Equal Protection*

According to Plaintiff, he and another inmate, Donoven Harris, were placed in solitary confinement following their escape and subsequent capture. Plaintiff complains that Defendants Collins and Rudder kept him in solitary confinement longer than Harris. It is apparent that Plaintiff is raising a claim under the Equal Protection Clause.

"The Equal Protection Clause directs that persons similarly situated should be treated alike." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). To prove a claim for violation of the Equal Protection Clause, a plaintiff "must demonstrate that prison officials acted with a discriminatory purpose." *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). This requires a showing that the defendant acted "at least in part because of, and not simple in spite of, the adverse impact it would have on an identifiable group." *Id*. A plaintiff may also make a "class-of-one" claim, which requires a plaintiff to show that he was intentionally treated differently

from other similarly situated individuals with no rational basis for the difference in treatment. *Lindquist v. City of Pasadena, TX*, 669 F.3d 225, 233 (5th Cir. 2012).

Plaintiff does not allege to be a member of a specific group or that any defendant singled out a particular group for disparate treatment. Thus, it appears that Plaintiff is asserting a class-of-one claim. Many courts have concluded that a class-of-one claim is not viable when based on individualized assessments of inmates because of the individualized and discretionary nature of the prison setting. *See Striz v. Collier*, 2020 WL 7868102, at *13 (S.D. Tex. Nov. 24, 2020) (collecting cases). Moreover, even if such a claim were viable, Plaintiff has failed to establish that he has been intentionally treated differently from another similarly situated individual.

Plaintiff alleges that he was held in solitary confinement longer than Donoven Harris following their escape and capture. Plaintiff, however, has failed to demonstrate he and Harris were similarly situated within the jail setting. At the time of his subject confinement, Plaintiff was a post-conviction inmate, but Plaintiff does not allege whether Harris was a post-conviction inmate or pretrial detainee. Plaintiff has not demonstrated that he and Harris had similar criminal records or jail disciplinary records. "There is nothing in the constitution which requires prison officials to treat all inmate groups alike where differentiation is necessary to avoid an imminent threat of institutional disruption or violence. *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 136 (1977). "The federal courts cannot assume the task of retrying all prison disciplinary disputes." *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981). "There exists a myriad of reasons that could result in different disciplinary findings for different inmates," and without evidence that Plaintiff and Harris were similarly situated, Plaintiff's equal-protection claim should be dismissed. *See Marte v. Geo Group, Inc.*, 2015 WL 12632288, at *5-6 ( N.D. Tex. Oct. 27, 2015).

*Conditions*

Plaintiff alleges that while he was housed in solitary confinement, he received a shower each day, except when Defendant Cooley was on duty. According to Plaintiff, he would miss approximately three showers a week when Cooley was on duty. Thus, Plaintiff alleges that Cooley is responsible for him getting four showers a week instead of seven. Plaintiff also alleges that Cooley used racial slurs and refused to allow Plaintiff to make phone calls.

The Eighth Amendment protects inmates from cruel and unusual punishment. However, not all unpleasant conditions of confinement amount to cruel and unusual punishment. "To the extent such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "[T]he Constitution does not mandate comfortable prisons, and prisons…cannot be free of discomfort." *Id*. at 349. Only those conditions which are "inhuman and barbaric" and deny an inmate of "the minimal measure of life's necessities" violate the Eighth Amendment. *Palmer*, 193 F.3d at 352. Only extreme deprivations can be characterized as punishment prohibited by the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992).

The conditions alleged by Plaintiff may have exposed him to some unpleasantness and discomfort but were not so egregious as to rise to the level of cruel and unusual punishment. *See Holloway v. Gunnell*, 685 F.2d 150, 156 n.6 (5th Cir. 1982) ("A number of courts have held that one or two showers a week is sufficient to satisfy constitutional requirements."); *see also Brown v. King*, 2012 WL 5304084, at *3 (S.D. Miss. Oct. 25, 2012) (holding that plaintiff's claim that he was unable to use the phone did not establish a violation of his constitutional right);[4] *Bender*

---

[4] Moreover, phone restrictions do not implicate due process concerns because it is not an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Hinojosa v. Thaler*, 427 Fed. App's 354, 355 (5th Cir. 2011).

12

*v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993) (holding that verbal taunts and racial slurs do not give rise to liability under § 1983). Accordingly, Plaintiff claims arising from the treatment while in solitary confinement should be dismissed.

### Bond

Plaintiff asserts a claim against Defendant Sheriff McGee, alleging that he was not granted a bond after his criminal charge was lowered from capital murder to second degree murder. Plaintiff, however, has failed to show that Sheriff McGee had any personal involvement in the setting of his bond or that Sheriff McGee had authority to grant him a bond. Defendants point out that Miss. R. Crim. P. 8.2 provides that circuit, county, justice, and municipal courts have the authority to set bonds. Additionally, during the *Spears* hearing, when asked if Sheriff McGee or any other Defendant sets bonds, Plaintiff responded, "no, no, sir, I'm not aware if they do or not, no sir." [31-1] at 27. Accordingly, Plaintiff has failed to establish that Sheriff McGee violated Plaintiff's rights concerning a bond, and Sheriff McGee is entitled to summary judgment on this claim.

### Failure to Protect

Plaintiff asserts that Sheriff McGee failed to protect him from harm at the hands of his fellow detainees. According to Plaintiff, jail policy required that co-defendants in criminal matters be housed separately. Plaintiff alleges that, despite this policy, Sheriff McGee housed him with his co-defendants in the murder case (Aaron Jones and David Jones), and these individuals assaulted him.

Plaintiff's jail file demonstrates that he was housed with his co-defendants prior to his conviction for murder on September 24, 2018. Specifically, he was housed with Aaron Jones for two days in November of 2016 and was housed with David Jones between December 22, 2016,

13

and February 3, 2017. *See* [27] at 147. Plaintiff was a pretrial detainee at the time of the alleged assaults.

Therefore, Plaintiff's failure-to-protect claim arises from the due process clause of the Fourteenth Amendment and not the Eighth Amendment's cruel and unusual punishment clause. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). Similar to the protections afforded to an inmate under the Eighth Amendment, the Fourteenth Amendment places a duty on jail official to protect a pretrial detainee from violence at the hands of other detainees. *Id*. However, not every injury suffered by one detainee at the hands of another amounts to a constitutional violation by jail officials. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In a case alleging an "episodic act or omission" by a jail official, such as Plaintiff alleges here, a detainee must demonstrate that the official acted with deliberate indifference to a substantial risk of serious harm to the detainee. *Id*. at 636. A detainee must show that (1) he was subjected to conditions posing a substantial risk of serious harm and (2) a jail official was deliberately indifferent to his need for protection. *Id*. at 648.

Deliberate indifference consists of the official being aware of both the "facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference "'is an extremely high standard to meet.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). Negligent failure to protect an inmate does not rise to the level of a constitutional violation. *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer*, 511 U.S. at 837.

Defendants argue that Sheriff McGee is entitled to summary judgment because he was not aware of a substantial threat to Plaintiff prior to the alleged attacks. Defendants point to the following exchange between the Court and Plaintiff during the *Spears* hearing:

Court: What information do you claim that [Sheriff McGee] knew that would suggest these guys, the Jones guys, were a danger to you?

Plaintiff: None, sir.

[31-1] at 29.

Plaintiff does not allege that Sheriff McGee knew of a specific threat posed by Aaron and David Jones. Instead, Plaintiff alleges that Sheriff McGee violated jail policy which required that co-defendants be housed separately. However, violations of jail policy and procedure, without more, do not rise to the level of a constitutional deprivation. *See Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). Plaintiff's allegations rise, at most, to the level of negligence. "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference . . . ." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 379 (5th Cir. 2005).

Based on the record, the Court finds that Sheriff McGee's actions and/or inactions do not rise to the level of deliberate indifference. Plaintiff has failed to present, and the record does not contain, evidence that Sheriff McGee knew Aaron and David Jones posed an imminent threat to Plaintiff and ignored the threat. Plaintiff never identified any specific or obvious threat or danger. Accordingly, the Court should grant Defendants' Motion [31] to the extent it seeks dismissal of plaintiff's failure-to-protect claim.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that:

1. Defendants' first Motion for Summary Judgment [25] be DENIED.

2. Defendants' Second Motion for Summary Judgment [31] be GRANTED in part and DENIED in part.

3. Plaintiff's claims be DISMISSED with prejudice.

4. A separate judgment in accordance with Federal Rule of Civil Procedure 58 be entered.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject, or modify in whole or in part the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This the 8th day of December, 2021.

s/ Michael T. Parker<br>
United States Magistrate Judge